# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JAIME L. HADDIX,

        Plaintiff,

v.                      CIVIL ACTION NO. 1:14CV12
                              (Judge Keeley)

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## MEMORANDUM OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b)(1)(B), Fed. R. Civ. P. 72(b), and L.R. Civ. P. 4.01(d), the Court referred this Social Security action to United States Magistrate John S. Kaull ("Magistrate John S. Kaull" or "magistrate judge") with directions to submit proposed findings of fact and a recommendation for disposition.

When Magistrate Judge Kaull filed his Report and Recommendation ("R&R"), he directed the parties, in accordance with 28 U.S.C. §636(b)(1) and Rule 6(e), Fed. R. Civ. P., to file any written objections with the Clerk of Court within fourteen (14) days after being served with a copy of the R&R. (Dkt. No. 16.) Thereafter, the plaintiff, Jaime L. Haddix ("Haddix"), by her counsel, Michael G. Miskowiec, filed timely objections to the R&R. (Dkt. No. 17.)

**MEMORANDUM OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

## I. <u>PROCEDURAL BACKGROUND</u>

On December 4, 2010[1], Haddix filed applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"), alleging disability since June 1, 2009, due to "bipolar, social anxiety, general anxiety, psychosocial." (R. 164-74. 195.) The Administrative Law Judge ("ALJ") later granted Haddix's motion and amended her onset date to March 31, 2009. (R. 190.) Following denial of her applications initially and on reconsideration (R. 93-102, 108-21), at Haddix's request, the ALJ held a hearing on August 12, 2012, at which Haddix, represented by counsel, and with her husband, appeared and testified. An impartial vocational expert ("VE") also testified. (R. 41-88.)

On September 26, 2012, the ALJ determined that Haddix was not disabled. (R. 11-23.) Following that determination, Haddix filed a request for review by the Appeals Council (R. 261), which denied her request on December 3, 2013, thereby making the ALJ's decision the final decision of the Commissioner. (R. 1-7.) On January 17, 2014, Haddix timely filed this civil action seeking review of that final decision. (Dkt. No. 1.)

---

[1] The application date noted in the R&R is December 14, 2010.

MEMORANDUM OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

## II.  PLAINTIFF'S BACKGROUND

On August 12, 2012, the date of the administrative hearing, Haddix was thirty-four (34) years old (R. 22, 43), and is considered a younger individual, age 18-49. (R. 22.) She completed the tenth (10th) grade and can read and write in English. (R. 46.) Her past relevant work history includes employment as a cashier and telemarketer. (R. 196.)

## III.  ADMINISTRATIVE FINDINGS

Utilizing the five-step sequential evaluation process prescribed in the Commissioner's regulations at 20 C.F.R. §§ 404.1520, the ALJ found:

1.  Haddix has met the insured status requirements of the Social Security Act through March 31, 2009;

2.  Haddix has not engaged in substantial gainful activity since March 31, 2009, the alleged onset date, (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*);

3.  Haddix has the following severe impairments: bipolar I disorder, generalized anxiety disorder, and posttraumatic stress disorder (PTSD) (20 CFR 404.1520(c) and 416.920(c));

4.  Haddix's impairments or combination of impairments do not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926) (R. 32);

5.  After careful consideration of the entire record, Haddix has the residual functional capacity to perform a full range of work at all exertional levels with the following nonexertional limitations: work must involve only simple

routine and repetitive tasks, cannot perform at a production rate pace but can perform goal oriented work, cannot have more than occasional interaction with supervisors and co-workers, cannot have any interaction with the public, and can have only occasional changes in the workplace;

6.   Haddix is unable to perform any past relevant work (20 CFR 404.1565 and 416.965);

7.   Haddix was born on March 7, 1978, and, on the alleged disability onset date, was 31 years old, which is defined as a younger individual age 18-49,(20 CFR 404.1563 and 416.963);

8.   Haddix has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964);

9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Haddix is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

10.   Considering her age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that Haddix can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)); and

11.   Haddix has not been under a disability, as defined in the Social Security Act, from March 31, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. at 11-23.)

## IV.   <u>MEDICAL EVIDENCE</u>

The Court incorporates the magistrate judge's extensive review of both the medical and non medical evidence in the R&R (dkt. no.

16 at 2-12), as well as his review of the testimonial evidence. (Dkt. No. 16 at 12-5.) The Court also incorporates the magistrate judge's review of the VE testimony. (Dkt. No. 16 at 15-6).

## V. <u>SCOPE OF REVIEW</u>

In reviewing an administrative finding of no disability, a district court's scope of review is limited to determining only whether "the findings of the Secretary are supported by substantial evidence and whether the correct law was applied." <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990.) Prior to <u>Hays</u>, the Fourth Circuit had recognized the specific and narrow scope of judicial review in social security disability cases. "We do not conduct a de novo review of the evidence, and the Secretary's finding of non-disability is to be upheld, even if the court disagrees, so long as it is supported by substantial evidence." <u>Smith v. Schweiker</u>, 795 F.2d 343, 345 (4th Cir.1986.)

The Supreme Court of the United States has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept to support a conclusion.'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (<u>quoting</u> <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938).) And, in <u>Hays</u>, the Fourth Circuit observed that substantial evidence "'consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'" 907 F.2d at 1456 (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1968).) A reviewing court must also consider whether the ALJ applied the proper standard of law. "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

Furthermore, a district court is obligated to conduct a de novo review of those portions of a magistrate judge's R&R to which objections have been filed. 28 U.S.C. § 636(b)(1)(C.) It need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982.) In the absence of a specific objection, the Court will only review the magistrate judge's conclusions for clear error. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005.) A failure to file specific objections waives appellate review of both factual and legal questions. See United States v. Schronce, 727 F.2d 91, 94 & n.4 (4th Cir. 1984); see also Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991).

## MEMORANDUM OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Here, Haddix's objections to the findings in the R&R regard the ALJ's credibility determination, and particularly the lack of weight he assigned to the report of Haddix's therapist at United Summit Center, Sandra K. Jones. At bottom, these objections simply reiterate the same arguments Haddix raised on summary judgment. There, she asserted:

> The Administrative Law Judge's findings that the testimony of Mrs. Haddix and her husband concerning her mental limitations was not credible is based on an inaccurate and selective consideration of the evidence and is not supported by substantial evidence.

(Dkt. No. 13 at 1.)

Haddix has also objected to the magistrate judge's conclusion that the ALJ's rejection of the opinion of Ms. Jones was harmless error. She asserts that a court cannot apply harmless error analysis where "the limitations in Ms. Jones' opinion were not included in the Administrative Law Judge's mental residual functional capacity finding." (Docket No. 17 at 1-4.)

Haddix has further objected to the R&R on the basis that it adopted the ALJ's finding that her testimony regarding her symptoms, particularly about medication-induced drowsiness, was not credible. Id. Again, Haddix has reargued the ALJ's determination that her testimony and that of her husband were not credible,

asserting it "is based on an inaccurate and selective consideration of the evidence and is not supported by substantial evidence".

The general rule is that objections to a magistrate judge's R&R that merely reiterate arguments already presented "lack the specificity required by Rule 72 and have the same effect as a failure to object." <u>Phillips v. Astrue</u>, No. 6:10-53, 2011 WL 5086851, at *2 (W.D. Va. Oct. 25, 2011) (citing <u>Veney v. Astrue</u>, 539 F.Supp.2d 841, 845 (W.D. Va. 2008.) Nevertheless, out of consideration to Haddix's contentions, the Court has undertaken a <u>de novo</u> review of all the matters considered by the magistrate judge, and, for the reasons that follow, concludes not only that there is no clear error, but also that there is substantial evidence in the record to support the weight the ALJ assigned to the report of Sandra K. Jones, and also the ALJ's credibility determination.

## VI. <u>OBJECTIONS</u>

### A.    <u>Haddix's Objections</u>

Haddix contends that the magistrate judge erred in concluding that the ALJ's rejection of her therapist's opinion was harmless error. She argues that the ALJ improperly rejected the opinion of Ms. Jones by failing to refer to any evidence or consider any of the factors outlined in the Commissioner's regulations, and by

failing to consider that Haddix's treating physician, Dr. Paul Davis, concurred with Jones' opinion. (Dkt. No. 17 at 1.)

Haddix also objects to the magistrate judge's adoption of the ALJ's credibility finding. She contends that the magistrate judge overlooked important errors in the ALJ's decision. Specifically, she references his finding that no substantial evidence in the record supported her contention that her medications made her sleepy or drowsy. She also objects that the magistrate judge did not credit her husband's supportive testimony, or her own testimony regarding the daily assistance her mother-in-law and sister-in-law provided. (Dkt. No. 17.)

## VII.   DISCUSSION

### A. Opinion of Sandra K. Jones

The magistrate judge determined that, although the ALJ had not adequately set forth his reasons for rejecting the opinion of Haddix's therapist, Sandra K. Jones, that omission was harmless error. (R&R at 38.)

It is significant to note that Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939 (Aug. 9, 2006), provides that a therapist, while a "medical source," is not an "acceptable medical source." Id. at *2.  SSR 06-03p states:

> The distinction between "acceptable medical sources" and other health care providers who are not "acceptable medical sources" is necessary for three reasons.  First,

we need evidence from "acceptable medical sources" to establish the existence of a medically determinable impairment. . . . Second, only "acceptable medical sources" can give us medical opinions. . . . Third, only "acceptable medical sources" can be considered treating sources . . . whose medical opinions may be entitled to controlling weight.

Id. It further notes that:

With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

Id. at *3. Information from "other sources," such as therapists, "may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." Id. at *2.

In Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984), the Fourth Circuit stated that a court "cannot determine if findings are supported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence." Furthermore, "[u]nless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to

obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Arnold v. Sec'y of Health, Ed. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977.)

Title 20, Part 404, Section 1527(d) of the Code of Federal Regulations provides that, "unless controlling weight is assigned to a treating source's medical opinion," an ALJ must consider certain factors when deciding the weight to be assigned to any medical opinion. These include (1) the examining relationship, (2) the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) any other factors that tend to support or contradict the opinion.  20 C.F.R. § 1527(d.)

Although an ALJ must consider these factors when weighing the evidence, he is not under a mandate to conduct a factor-by-factor analysis. Pinson v. McMahon, 3:07-1056, 2009 WL 763553, at *10 (D.S.C. Mar. 19, 2009.) He need only be "sufficiently specific to make clear to any subsequent reviewers the weight he gave to the treating source's medical opinion and the reasons for that weight." 20 C.F.R. § 1527(d)(2); and SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996.) "[W]hen a physician offers specific restrictions or limitations . . . the ALJ must provide reasons for accepting or

rejecting such opinions." <u>Trimmer v. Astrue</u>, No. 3:10CV639, 2011 WL 4589998, at *4 (E.D. Va. Sept. 27, 2011), <u>aff'd by</u> 2011 WL 4574365 (E.D. VA. Sept. 30, 2011.) Thus, a logical nexus must exist between the weight accorded to opinion evidence and the record, and the reasons for assigning such weight must be "sufficiently articulated to permit meaningful judicial review." <u>DeLoatch</u>, 715 F.2d at 150.

Here, regarding the weight he assigned to Sandra K. Jones' opinion, the ALJ stated only:

> This opinion has been considered but given little weight. The residual functional capacity includes limitations concerning interactions with others and a limitation to unskilled work with routine and repetitive tasks. These limitations are consistent with the document [sic] mental symptoms and limitations and jobs were still found.

(R. at 18.)

Even though the magistrate judge determined that the ALJ had failed to explain sufficiently why he assigned little weight to Jones' opinion, he further determined such inadequacy was harmless error. <u>Cf.</u> <u>Ngarurih v. Ashcroft</u>, 371 F.3d 182, 190 n.8 (4th Cir. 2004) ("While the general rule is that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained, reversal is not required where the alleged error clearly

had no bearing on the procedure used or the substance of the decision reached." (internal quotation marks omitted).)

In her opinion, Jones concluded that Haddix's "symptoms consistently impaired her ability to function in a "work setting where she would need to interact with people or be able to concentrate." (R. at 493.) In his R&R, the magistrate judge noted that the ALJ's residual functional capacity finding contained the following limitations: that Haddix's work must involve only simple routine and repetitive tasks; that she cannot perform at a production rate pace but can perform goal oriented work; that her work must entail no more than occasional interaction with supervisors and co-workers; and that she should have no interaction with the public, with only occasional changes in the workplace. (R. at 15-16.)

Based on these findings, the magistrate judge determined that the ALJ, in fact, had incorporated Jones' opinion into his analysis, and that his failure to explicitly explain why he assigned little weight to her opinion therefore was harmless error. ("[A]n ALJ's failure to expressly state the weight given to a medical opinion may be harmless error, when the opinion is not relevant to the disability determination or when it is consistent

with the ALJ's RFC determination.") <u>Rivera v. Colvin</u>, No. 5:11CV569-fl, 2013 WL 2433515, at *3 (E.D.M.C. June 4, 2013).

Here, the magistrate judge determined that the ALJ had followed the regulations governing the treatment of medical opinion evidence. Although the ALJ failed to sufficiently explain why he had assigned little weight to Jones' opinion, he included the limitations contained in Jones' opinions in his RFC determination. Accordingly, the magistrate judge's conclusion that substantial evidence supports the ALJ's treatment of the opinion evidence is correct. (R&R at 39.)

**B.    <u>Credibility Analysis</u>**

The Fourth Circuit has held that "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, an ALJ's observations concerning these questions are to be given great weight." <u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir. 1984) (<u>citing</u> <u>Tyler v. Weinberger</u>, 409 F. Supp. 776 (E.D. Va. 1976).) In <u>Ryan v. Astrue</u>, No. 5:09CV55, 2011 WL 541125, at *3 (N.D. W. Va. Feb. 8, 2011) (Stamp, J.), the district court found that "[a]n ALJ's credibility determinations are 'virtually unreviewable.'"

When making a credibility determination, however, an ALJ has a "'duty of explanation'" regarding a claimant's testimony. <u>See</u>

Smith v. Heckler, 782 F.2d 1176, 1181 (4th Cir. 1986) (citing DeLoatche v. Heckler, 715 F.2d 148, 150-51 (4th Cir. 1983)); see also Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985.) If the ALJ meets his basic duty of explanation, "[w]e will reverse an ALJ's credibility determination only if the claimant can show it was 'patently wrong.'" Sencindiver v. Astrue, No. 3:08-CV-178, 2010 WL 446174, at *33 (N.D. W. Va. Feb. 3, 2010 (Seibert, Mag. J.) (quoting Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000).)

Here, the ALJ initially evaluated Haddix's subjective complaint of pain under the two-prong test for credibility established in the seminal case of Craig v. Chater, 76 F.3d 585 (4th Cir. 1996). The first prong of Craig requires an ALJ to determine whether the objective evidence of record establishes the existence of a medical impairment or impairments resulting from anatomical, physiological or psychological abnormalities that could reasonably be expected to produce the pain or other symptom alleged. Id. at 594. Under the second prong, an ALJ must "expressly consider" whether a claimant has such an impairment. Id. at 596. If a claimant satisfies these two prongs, an ALJ then must evaluate the "intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." Id. at 595.

This evaluation must consider

> not only the claimant's statements about her pain, but
> also 'all the available evidence,' including the
> claimant's medical history, medical signs, and laboratory
> findings . . . and any other evidence relevant to the
> severity of the impairment, such as evidence of the
> claimant's daily activities, specific descriptions of the
> pain, and any medical treatment taken to alleviate it.

Id.

Although the ALJ determined that Haddix had satisfied the two prongs of Craig, he nevertheless concluded that her testimony concerning the intensity, persistence, and limiting effects her symptoms was not entirely credible. (R. 16.) An ALJ "will not reject [a claimant's] statements about the intensity and persistence of . . . pain or other symptoms or about the effect [those] symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2) (alterations in original.)

Social Security Ruling ("SSR") 96-7p provides an expansive list of factors an ALJ may rely on when assessing the credibility of an individual's subjective allegations of pain. These factors include the individual's daily activities, the location, duration, frequency, and intensity of the individual's pain or other symptoms, any factors that precipitate and aggravate the symptoms, the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other

symptoms, any treatment or other than medication, the individual receives or has received for relief of pain or other symptoms, any measures other than treatment the individual uses or has used to relieve pain or other symptoms, and, any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996.)

An ALJ's decision, however, "must contain specific enough reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight." Id. at *2. Here, the ALJ found as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(R. at 16.)

Regarding Haddix's daily activities, the ALJ stated:

> The claimant testified that she stayed home to take care of her children after she was fired from a telemarketing job. She also testified that she lives in her home with her husband and two children who are now six years old and nine years old. She stated that in addition to caring

17

> for the children themselves, they also receive weekly
> [sic] from two relatives. Both the claimant and her
> husband testified that the claimant is heavily dependent
> on her husband for activities of daily living. They both
> also testified that they depend on the husband's
> disability pay for their support. Mr. Haddix testified
> that he is disabled due to bad back problems and
> fibromyalgia. The undersigned has a difficult time
> understanding how Mr. Haddix, who is disabled due [sic]
> his back and fibromyalgia would be able to deliver such
> a complete and comprehensive level of care to the
> claimant as she and her husband report. These allegations
> distract greatly from the credibility of both the
> claimant and her husband. It is noted also that the
> claimant has very few years in the work force, even
> before her alleged onset date and during the period that
> she reported she was doing well without being on
> medications[.] (Exhibit 1F)

(R. at 17.)

He also considered the location, duration, frequency, and

intensity of Haddix's symptoms, and her functional limitations and

restrictions:

> The claimant is not entirely credible as to the nature
> and extent of her symptoms and limitations. The evidence
> of record does not reflect that she is as impaired as she
> alleges. Her objective mental status reports consistently
> identify her as cooperative, providing good history
> information, good eye contact. Her treating source who is
> [sic] primary care physician, notes that the claimant has
> normal mental status across time[.]
>
>                          . . .
>
> Records also show that after her arrest for domestic
> violence, the claimant was able to successfully complete
> an anger management program during the time frame in
> which she alleges that she was disabled. It is also noted
> throughout the record that the claimant, during mental

> status examinations is shown to have an appropriate
> mental status. (Exhibits 1F, and 15F)

(R. at 16-17.)

Haddix contends that the ALJ failed to consider her difficulty with extreme drowsiness brought on by her medications. In support of this argument, she relies on the following statements in her disability reports:

1.    The March 9, 2011 report that she was falling asleep "a lot" because of her medication. (R. at 218.); and

2.    An undated report that her medications made her drowsy, very tired, and sleepy. (R. at 243.)

At the hearing, Haddix testified that she takes her medication at 9:00 A.M., becomes "sleepy" within fifteen or twenty minutes, and remains sleepy for the next five or six hours. She further testified that her medication made her feel "tired and wore out" and like a "truck ran over" her. (R. at 58.)

The evidence of record establishes the following:

1.    On August 27, 2009, after Haddix complained to Paul Davis ("Davis"), her primary care provider, that she had been feeling "sleepy all day" he discontinued her prescription for Trazodone (R. at 318);

2.    On October 8, 2009, Haddix complained to Davis that she not sleeping well and asked about resuming Trazodone. He assessed

insomnia and bipolar disorder, represcribed Trazodone, and continued her prescription for lithium (<u>Id.</u>);

3. On June 4, 2010, Haddix indicated to Brian Hawk ("Hawk"), BS/PDCC at United Summit Center ("USC") that the Xanax helped her anxiety, and that her other medications were "efficient" (R. at 281);

4. On April 24, 2012, Haddix indicated to Ashley Coontz ("Coontz"), PS/PD/CC at USC, that she was experiencing "a loss of sleep" (R. at 488);

5. On July 5, 2012, Haddix reported to Jones at USC that she had "poor sleep" (R. at 505-06); and

6. On July 3, 2012, Haddix reported to Davis that she was "doing well" on her present medications but was "still having trouble sleeping" (R. at 525.)

"Drowsiness often accompanies the taking of medication, and it should not be viewed as disabling unless the record references serious functional limitations." <u>Johnson v. Barnhart</u>, 434 F.3d 650, 658 (4th Cir. 2005) (citing <u>Burns v. Barnhart</u>, 312 F.3d 113, 131 (3d Cir. 2002).

In connection with his credibility assessment, the ALJ also considered the following medical evidence that he concluded was inconsistent with Haddix's subjective complaints:

## MEMORANDUM OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

1.    A July 2, 2009, initial evaluation at USC by Ms. Metheny, indicating Haddix had had a fight with her sister-in-law, and had not taken the medications that control her mood (R. at 265.) Ms. Metheny noted that Haddix was oriented as to "person, place, time and situation" and was cooperative (R. at 266.) She assigned Haddix a GAF of 55 and assessed bipolar disorder (R. at 268);

2.    A July 30, 2009, psychiatric evaluation by Nurse Practitioner (NP) McPherson at USC indicating Haddix had been doing "a lot better" since being prescribed lithium, Restoril, Risperdal, and Xanax. (R. at 283.)    NP McPherson noted that Haddix was oriented and cooperative, had good eye contact. She assigned Haddix a GAF score of 50, increased the dosage of Risperdal, and continued her prescriptions for lithium and Xanax (R. at 284);

3.    A December 8, 2009, review assessment by Ms. Bates, BS/CM/PO of USC, indicating Haddix had denied acting violently, had denied any suicidal thoughts, and was dressed "neatly and appropriately."  Ms. Bates noted that Haddix was "in good spirits" and was oriented to all four spheres, had "goal directed and logical" speech, and denied any psychosis (R. at 285-92);

4.    A May 7, 2010, assessment from Vickie Ashcraft indicating Haddix had been admitted to the Crisis Stabilization Unit at USC "due to the prospect of being homeless and away from her husband

21

and children as a result of domestic violence charges in June 2009." (R. at 302.)  Ms. Ashcraft noted that Haddix was oriented in all four spheres, had a dysphoric mood and congruent affect, was appropriately groomed, and that, even though Haddix had racing thoughts, the thought processes "appeared logical and goal oriented." Haddix denied "obsessions, compulsions, hallucinations, delusions, homicidal, or suicidal ideations" (R. at 303-04.)  She was discharged from the Crisis Stabilization Unit on May 9, 2010 (R. at 312);

5.  On June 4, 2010, Hawk performed a one-year review of Haddix, indicated that she was taking Xanax for anxiety and that her medications were keeping her stable. He noted that she was oriented in all spheres, was cooperative, had an anxious mood and congruent affect (R. at 274-82);

6.  On January 11, 2011, Hawk again reviewed Haddix's situation and noted she was oriented in all four spheres, was cooperative, had an anxious mood and affect, but denied hallucinations and delusions (R. at 269-71);

7.  On June 6, 2011, a staff member at USC completed a Routine Abstract Form—Mental and noted that Haddix was fully oriented, had rambling speech and paranoid delusions, had  mildly deficient judgment and insight, an anxious mood, appeared "fidgety"

(R. at 388), and had moderately deficient social functioning and pace (R. at 389.) The diagnosis was bipolar disorder and a GAF score of 55 (R. at 390);

8.   On April 24, 2012, Coontz at USC assessed Haddix, noting she was oriented as to all spheres, was "cooperative and informative," (R. at 490), was "obviously nervous and anxious, and shook her leg throughout the entire assessment" (Id.) Coontz diagnosed bipolar I disorder, most recent episode manic severe without psychotic features, generalized anxiety disorder, and posttraumatic stress disorder (R. at 491.)Her "low end treatment included: individual therapy, care coordination, re-assessments every 180 days or at critical juncture, medication management, and utilization of crisis services if needed" (Id.); and

9.   A July 5, 2012 assessment from Jones at USC noting that Haddix was oriented as to all spheres, maintained "adequate eye contact," and denied experiencing hallucinations and delusions. (R. at 506-07.) Jones diagnosed bipolar I disorder, generalized anxiety disorder, and posttraumatic stress disorder. (R. at 507.) Treatment included individual therapy every two weeks and pharmacological management as scheduled. (Id.)

In his assessment of Haddix's credibility, and based on the medical evidence of record, the magistrate judge determined that

the ALJ had complied with the factors set out in <u>Craig</u> and SSR 96-7p. The ALJ discussed Haddix's daily activities, and the nature and extent of her symptoms and limitations. While Haddix complains that the ALJ erred by not considering extreme sleepiness as a side effect of her medications, Haddix never succeeded in establishing that her alleged extreme sleepiness resulted in "serious functional limitations." <u>Burns</u>, 312 F.3d at 131. Furthermore, as noted above, the medical evidence that the ALJ did thoroughly discuss does not support Haddix's subjective complaints. Accordingly, the Court adopts the magistrate judge's recommendation that substantial evidence supports the ALJ's credibility determination.

## VIII. <u>CONCLUSION</u>

In her objections, Haddix has not raised any issues that were not thoroughly considered by Magistrate Judge Kaull in his R&R. Moreover, the Court, upon an independent <u>de</u> <u>novo</u> consideration of all matters now before it, is of the opinion that the R&R accurately reflects the law applicable to the facts and circumstances in this action. Therefore, the Court **ACCEPTS** the R&R in whole, and **ORDERS** that this civil action be disposed of in accordance with the recommendation of the Magistrate Judge. Accordingly, it

**MEMORANDUM OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

1.  **GRANTS** the defendant's motion for Summary Judgment (Dkt. No. 14);

2.  **DENIES** the plaintiff's motion for Summary Judgment (Dkt. No. 12); and

3.  **DISMISSES** this civil action **WITH PREJUDICE;** and

4.  **ORDERS** that it be **RETIRED** from the docket of this Court.

Pursuant to Fed.R.Civ.P. 58, the Court directs the Clerk of Court to enter a separate judgment order and to transmit copies of both Orders to counsel of record.

DATED: March 17, 2015.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE